SAMUEL, Judge.
Plaintiff sold to defendant a used trail-mobile refrigerator van, receiving as part-payment of the purchase price the defendant’s promissory note in the amount of $6,013.70. The note was secured by a chattel mortgage on the vehicle. This suit seeks recovery of $5,344, the alleged unpaid principal balance of the note, together with interest, attorney’s fees, and recognition and maintenance of plaintiff’s lien rights. Defendant answered and reconvened, denying liability and seeking rejection of plaintiff’s claim, rescission of the sale of the vehicle, cancellation of the chattel mortgage, and damages, all as a result of plaintiff’s alleged failure to deliver to him a certificate of title to the vehicle, thus preventing him from obtaining the required state license necessary to operate the trailer upon the public highways and depriving him of its use as a cargo carrier.
After trial there was judgment, on the main demand, in favor of plaintiff in suit as prayed and, on the reconventional demand, in favor of defendant in reconvention, rejecting the reconventional demand. Defendant in the main demand and plaintiff in reconvention has appealed.
The primary issue in this court, as was the case in the trial court, is whether delivery of a certificate of title to the appellant, Baillio, was made by the appellee, Fruehauf. The trial judge found such delivery had been made. In the absence of a reversal of that factual finding the judgment appealed from must be affirmed for the reason that appellant has urged no defense other than nondelivery of title.
During the course of an extended trial Fruehauf offered the testimony of the following witnesses: the manager (at the time of the sale) of its New Orleans branch through which the vehicle had been purchased; the notary who had notarized and paraphed various documents involved in the sale; the Fruehauf employee who had handled the sale transaction; a subsequent manager of its New Orleans branch office; and the vice president of Time Distributors, Inc., the corporation from which it had obtained the vehicle in suit. Baillio offered two witnesses, himself and his wife. In addition to the testimony of these witnesses various documents were introduced into evidence by both litigants.
The undisputed facts are as follows: The sale took place on January 21, 1960. As Fruehauf had to obtain notarization of sale documents, neither those documents nor a certificate of title was given Baillio on the day of the sale. Baillio did not obtain a license for the vehicle. However, he did use the trailer from the date of purchase until June, 1960 to haul cargoes of bananas to various parts of the United States. During this period he avoided the necessity of obtaining a license for the trailer by switching license plates from another unit not in use because of a collision (without obtaining permission to do so from the owner of that wrecked trailer) to the one purchased from appellee. Several monthly installments called for by the note were due and unpaid at the time Fruehauf filed this suit.
With regard to the factual question before us, Fruehauf’s witnesses testified: Appellant’s wife inquired about the certificate of title and the other documents a day or two after the sale transaction. She was *473 informed they would be forwarded as soon as the same were obtained from the notary. On January 26, 1960, five days after the act of sale had been passed, Fruehauf’s credit manager prepared and mailed to the defendant the certificate of title, endorsed by Time Distributors (the prior owner) and Fruehauf, which endorsements had been notarized prior to mailing, together with a number of other documents. The certificate and other documents were mailed to Baillio in a correctly addressed envelope which also contained a form letter customarily used by Fruehauf in such transactions. The form letter consisted of printed descriptions of numerous items with a space opposite each for checking the particular items enclosed. A copy of the form letter thus mailed was introduced into evidence. It shows four such items checked. Those checked items include a certificate of title with the correct title registration number typed thereon. The Frue-hauf employee who prepared and mailed the documents testified he could have obtained the title number only from the title certificate itself. Baillio had been informed and therefore knew he was to register the title to himself, as well as license the vehicle, at his own expense. He made no complaint concerning nondelivery of the certificate of title until the latter part of May, just before the purchase of a new state license was required and when two monthly note' installments were overdue and unpaid.
Baillio and his wife, who did the office work for her husband, testified they never received the certificate of title or the letter which Fruehauf’s witnesses claimed had been mailed. We note, as did the trial judge, that Mrs. Baillio admitted having received a payment book from Fruehauf. This book was one of the four items, as was the certificate of title, checked off as an enclosure in the form letter which plaintiff’s witnesses testified was mailed to Baillio.
In connection with the defense contention of nondelivery of title, counsel for Baillio argues that a certificate of title could not have been delivered because Time Distributors, the owner of the vehicle prior to Fruehauf, never had a title registered in its name. He relies on a letter addressed to prior defense attorneys on stationery of the Department of Revenue of the State of Louisiana, purportedly signed by the Chief of the Motor Vehicle Division, which letter he sought to introduce into evidence over a plaintiff objection.
Even assuming, but not deciding, that the letter in question was admissible in evidence, we are satisfied that Time Distributors did have a registered title in its name at the time the sale here involved was passed. The letter does refer to an absence of “registration” in the name of Time Distributors in the years 1959 and 1960. But it is clear the “registration” thus mentioned has reference to license rather than title registration. All of the other pertinent evidence, including particularly the testimony of the vice president of Time Distributors, who stated that in his official capacity he endorsed the title- over to Fruehauf at the time the van was transferred to the latter, and the fact that, as shown by the letter itself, a duplicate registered title in the name of Time Distributors was furnished by the Motor Vehicle Division in 1960, supports that conclusion. The vice president of Time Distributors appears to have been a disinterested, credible witness whose testimony was accepted by the trial court; and in the absence of a sufficient showing to the contrary, and no showing of any such kind has been made, we must assume that the Motor Vehicle Division would not, and could not, issue a duplicate registered title unless a title actually was registered at the time the duplicate was issued.
We are in complete agreement with the trial court’s finding that the certificate of title was in fact delivered to the defendant by mail.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.