WHIPPLE, C.J.
This is an appeal by plaintiff, Deborah Riedel, individually, and on behalf of her minor children, Rachel Riedel and Jeremy Canzoneri, from a judgment of the trial court granting summary judgment in favor of defendants, Angela Fenasci and Hollie Realty, L.L.C./RE/MAX Northshore ("Hollie Realty"), and dismissing Riedel's claims against them with prejudice. For the following reasons, we recall our show cause order and affirm.
FACTS AND PROCEDURAL HISTORY
This matter arises from the sale of a condominium in Hammond, Louisiana in *798 2014. Riedel had sought the assistance of real estate agent Angela Fenasci, who was employed by Hollie Realty, in purchasing a home. Riedel told Fenasci that she had owned many homes in the past, that she had "fixed them up" and sold them, and, thus, that a home that needed some work would be acceptable. Riedel discovered the particular condominium at issue through an internet search and requested that Fenasci work with her to view the property. The condominium was owned by Frank and Theresa Cali and was listed for sale by Coldwell Banker.
After viewing the condominium with Fenasci, Riedel entered into a "Louisiana Residential Agreement to Buy or Sell" ("purchase agreement") on April 25, 2014. The purchase agreement contained a "Sale 'As Is' Without Warranties" provision, stating that the property was being sold and purchased in "as is" condition and that Riedel waived all claims against the seller in redhibition or for reduction of the sales price and further stating that Riedel acknowledged that the sale was made without warranty of fitness for ordinary or particular use. Pursuant to the purchase agreement, the parties also agreed that the "Sale 'As Is' Without Warranties" provision would be made part of the Act of Sale.
Prior to the sale, Dale Brunet of Brunet's Home Inspection, L.L.C., conducted a home inspection on April 30, 2014. Fenasci scheduled and attended the home inspection with Riedel's approval. Riedel did not attend. The next day, May 1, 2014, Brunet emailed a copy of the Home Inspection Report he prepared to Fenasci, listing thirty-three "discrepancies" that he found during the inspection. Within minutes of receiving the email, Fenasci forwarded Brunet's email with the attached Home Inspection Report to Riedel.
Although Riedel contends in this litigation that she was unable to open the Home Inspection Report attached to the email from Fenasci, Riedel signed a Property Inspection Response the next day, May 2, 2014, in which she requested that the sellers repair certain discrepancies that had been listed in the Home Inspection Report, including replacing a leaking shower head and caulking the leaking tub in the master bathroom.
Thereafter, on May 9, 2014, the parties executed an Act of Sale.[1] At the time of closing, Riedel also signed a Final Inspection Release, acknowledging that the deficiencies cited in the Property Inspection Response had been satisfactorily corrected.
At some point after the closing, Riedel began making interior repairs, at which time she alleges she discovered what appeared to be moisture and water damage. Riedel filed a claim with her homeowner's insurer, which denied the claim by letter dated September 10, 2017, stating that its inspector had found a supply line from the second floor bathroom shower head had been leaking and had caused water damage to the first floor kitchen ceiling and that the damage "showed evidence of long-term damage, rot, [and] deterioration" not covered under her policy. (R. 1683-1684, 1695-1697). A subsequent mold inspection conducted on October 30, 2014 showed evidence *799 of suspected visible mold at that time.
Thereafter, on May 6, 2015, Riedel instituted this suit against Fenasci and Hollie Realty, among others, contending that Fenasci "had to have known about the moisture and mold" in the condominium, but represented to Riedel that the home inspector found nothing wrong with the property. Thus, she contended that Fenasci had violated her duty as a real estate agent and had committed fraud or gross negligence. She further contended that Hollie Realty was responsible for the actions of Fenasci as her employer. Riedel contended that she and her children suffered health problems as a result of their exposure to mold in the home and that the condition of the condominium rendered it uninhabitable. Thus, she sought general damages, medical expenses, attorney's fees and costs, and any other general and equitable relief deemed appropriate.
Fenasci and Hollie Realty subsequently filed a motion for summary judgment, contending that under Louisiana law, a real estate agent can only be held liable if the agent knows of a defect in the property and fails to disclose that defect to the purchaser. Thus, they asserted that because the evidence establishing that Fenasci had no knowledge of mold in the condominium was uncontested, Riedel could not establish liability on the part of Fenasci or Hollie Realty, as Fenasci's employer.
Following a hearing on the motion, the trial court issued written reasons for judgment, concluding that because Riedel could not produce any evidence that Fenasci had any knowledge of mold prior to the sale of the condominium, the motion for summary judgment should be granted. Accordingly, by judgment dated November 6, 2017, the trial court dismissed with prejudice all claims filed by Riedel, individually and on behalf of her minor children, against Fenasci and Hollie Realty.
Riedel then filed the instant appeal, contending in seven assignments of error that the trial court erred in granting the motion for summary judgment filed by Fenasci and Hollie Realty and dismissing her claims of fraud, negligent misrepresentation, failure to disclose, breach of contract, and redhibition.
RULE TO SHOW CAUSE
On April 25, 2018, this court issued a Rule to Show Cause Order, observing that the trial court's judgment was signed on November 6, 2017, with notice of the judgment issuing that same day. However, Riedel filed a motion and order of appeal on September 29, 2017 (prior to the signing of November 6, 2017 judgment), wherein she requested and was granted an appeal from a September 20, 2017 judgment rendered in favor of Fenasci and Hollie Realty. Thus, this court ordered the parties to show cause by briefs as to whether the appeal should or should not be dismissed. By order dated August 7, 2018, this court referred the Rule to Show Cause to the panel to which the appeal was assigned. Thus, we will first address the Rule to Show Cause Order.
In response to the Rule to Show Cause Order, Riedel notes that she filed three separate motions for appeal at the same time relative to three judgments rendered by the trial court following the August 28, 2017 hearing "out of an abundance of caution and to prevent missing the deadline to request [an] appeal." She concedes that the motion for appeal with regard to the judgment rendered in favor of Fenasci and Hollie Realty does not list the correct date of the signing of the judgment. Nonetheless, she asserts that she timely indicated her intent to appeal the judgment granting *800 the motion for summary judgment filed by Fenasci and Hollie Realty.
Appeals are favored in law, must be maintained wherever possible, and should not be dismissed on mere technicalities. Fruehauf Trailer Co. v. Baillio, 252 La. 181, 190, 210 So.2d 312, 315 (1968) ; Wells v. Hannah, 2017-1399 (La. App. 1st Cir. 4/6/18), 2018 WL 1663032, *4 (unpublished). The motion for appeal filed by Riedel on September 29, 2017 presents two problems: it was filed before a judgment on the merits was signed, and it lists the incorrect date of the later-signed judgment on the merits.
As to the premature filing of the motion for appeal, a defect arising from a premature motion for appeal (i.e., one taken before the signing of a final judgment) is cured once the final judgment has been signed. Chauvin v. Chauvin, 2010-1055 (La. App. 1st Cir. 10/29/10), 49 So.3d 565, 568 n.1 ; City of Denham Springs v. Perkins, 2008-1937 (La. App. 1st Cir. 3/27/09), 10 So.3d 311, 317 n.5, writ denied, 2009-0871 (La. 5/13/09), 8 So.3d 568.
With regard to the listing of the incorrect date of the trial court's judgment on the merits, we note that Riedel's motion for appeal, brief on the merits, and the assignments of error set forth therein clearly indicate Riedel's intent to appeal the trial court's November 6, 2017 judgment granting the motion for summary judgment filed by Fenasci and Hollie Realty and dismissing the claims against those defendants. Riedel's mistake in listing the incorrect date of the judgment in her motion for appeal is insufficient grounds for the dismissal of her appeal. See Byrd v. Pulmonary Care Specialists, Inc., 2016-0485 (La. App. 1st Cir. 12/22/16), 209 So.3d 192, 195 ; and In re: R.B. Jr. and C.H.B., 2018-0050, (La. App. 1st Cir. 8/10/18), 2018 WL 3828795, *3 (unpublished).
Considering the foregoing, and because appeals are favored in law, must be maintained wherever possible, and should not be dismissed on mere technicalities, we recall the Rule to Show Cause Order and maintain the appeal.
SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Jones v. Anderson, 2016-1361 (La. App. 1st Cir. 6/29/17), 224 So.3d 413, 417. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions.[2] LSA-C.C.P. art. 966(A)(4).
The burden of proof rests on the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is then on the adverse *801 party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. LSA-C.C.P. art. 966(D)(1).
Appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Crosstex Energy Services, LP v. Texas Brine Company, LLC, 2017-0895 (La. App. 1st Cir. 12/21/17), 240 So.3d 932, 936, writ denied, 2018-0145 (La. 3/23/18), 238 So.3d 963. Thus, appellate courts ask the same questions: whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Crosstex Energy Services, LP, 240 So.3d at 936. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Jones, 224 So.3d at 417.
DISCUSSION
In the instant case, Riedel's listed causes of action against Fenasci and Hollie Realty are all based on her contention that Fenasci either fraudulently withheld information about moisture and mold in the condominium or negligently misrepresented the condition of the condominium to her by failing to convey such information to her.[3]
A purchaser's remedy against a realtor is in damages for fraud, pursuant to LSA-C.C. art. 1953 etseq., or for negligent misrepresentation under LSA-C.C. art. 2315.[4] Duplechin v. Adams, 95-0480 (La. App. 1st Cir. 11/9/95), 665 So.2d 80, 84, writ denied, 95-2918 (La. 2/2/96), 666 So.2d 1104 ; Prejean v. Estate of Monteiro, 2015-0197 (La. App. 1st Cir. 9/18/15) (unpublished), 2015 WL 5515763, *3.
A claim of fraud under LSA-C.C. art. 1953 generally applies in cases where a contract exists. Prejean, 2015-0197, 2015 WL 5515763 at *3. "Fraud" is defined in the article as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." Fraud may also result from silence or inaction. LSA-C.C. art. 1953. The elements of the tort of fraud, similar to contractual fraud, are a misrepresentation of material fact made with the intent to deceive where there was reasonable and justifiable reliance by the plaintiff and resulting injury. Prejean, 2015-0197, 2015 WL 5515763 at *3.
The action for negligent misrepresentation arises ex delicto, rather than from contract. Duplechin, 665 So.2d at 84 In order for a plaintiff to recover for negligent misrepresentation, there must be a legal duty on the part of the defendant to supply correct information, a breach of that duty, and damage to the plaintiff *802 caused by the breach. A real estate agent owes a specific duty to communicate accurate information to the seller and the purchaser and may be held liable for negligent misrepresentation. Duplechin, 665 So.2d at 84 ; Prejean, 2015-0197, 2015 WL 5515763 at *3 ; see also LSA-R.S. 37:1455(A)(15) & (27). However, the duty to disclose any material defects extends only to those defects of which the agent is aware. Osborne v. Ladner, 96-0863 (La. App. 1st Cir. 2/14/97), 691 So.2d 1245, 1257.
Moreover, as to any alleged misrepresentations that relate to defects that are apparent and discoverable on simple inspection, when inspection is afforded the buyer before the sale, and where the buyer inspects the property before the sale, the buyer cannot then complain of fraud or negligent misrepresentation. Prejean, 2015-0197, 2015 WL 5515763 at *4. In other words, there can be no recovery for fraud or negligent misrepresentation for defects discoverable by simple inspection and where the buyer inspects the property prior to purchasing it. It is the buyer's burden to prove that the alleged defects were hidden. Prejean, 2015-0197, 2015 WL 5515763 at *4.
Accordingly, because Riedel would have the burden of proof at trial of proving that Fenasci concealed or misrepresented information she had obtained prior to or at the time of the sale about water, moisture or mold issues in the condominium, Fenasci and Hollie Realty needed only to point to the absence of factual support for this element of Riedel's claims in support of their motion for summary judgment. It then became Riedel's burden to produce factual support sufficient to establish the existence of a genuine issue of fact as to whether Fenasci concealed or misrepresented such information or to establish that Fenasci and Hollie Realty were not entitled to judgment as a matter of law. LSA-C.C.P. art. 966(D)(1).
In support of their motion, Fenasci and Hollie Realty submitted the Home Inspection Report completed by Brunet, which listed, among other "discrepancies," moisture damage to the wood lap siding and wood trim at the front dormer and right side of the home, a leaking shower head at the connection in the master bathroom shower, grout needed at the tub and shower wall in the master bathroom, and a leaking hot water handle on the sink faucet in the hall bathroom. Notably, Brunet attached photographs of these discrepancies to the Home Inspection Report, demonstrating that all of these discrepancies were visible and, thus, would have been apparent and discoverable to Riedel on simple inspection when she viewed the condominium. Moreover, the evidence in support of the motion further established that Fenasci forwarded Brunet's report to Riedel the same day Fenasci received it, the 1st of May, thus demonstrating the absence of intent by Fenasci to conceal any of this information from Riedel.
With regard to any contention that Fenasci had knowledge of mold in the condominium that she failed to disclose, Fenasci and Hollie Realty also submitted the affidavit of Brunet, in which he attested that at the time of the April 30, 2014 inspection of the condominium, he found no visible evidence of mold, nor any conditions that would be a reason to do further investigation or evaluation for mold. Additionally, in excerpts of Fenasci's deposition also submitted in support of the motion, Fenasci testified that she had gone to the property three times prior to the closing and that she did not see any evidence of mold or moisture any time she was there.
Although Riedel acknowledged that Fenasci had forwarded the Home Inspection Report to her, she contended in *803 opposition to the motion for summary judgment that she had never received a copy of the report.[5] However, as noted above, all of the discrepancies listed in the Home Inspection Report dealing with any type of water or moisture issues were visible and, thus, would have been apparent and discoverable on simple inspection by Riedel when she toured the condominium, as evidenced by the photographs attached to the report.[6] Moreover, as Brunet attested, at the time of the April 30, 2014 inspection of the condominium, he found no visible evidence of mold, nor any conditions that would warrant further investigation or evaluation for mold, and, more importantly, the Home Inspection Report did not contain any language that would give a homeowner reason to conduct further investigation or evaluation for mold. Thus, Riedel's contention that she did not receive a copy of the Home Inspection Report prior to her purchase of the condominium simply does not create an issue of material fact as to whether Fenasci had knowledge of mold issues or other defects in the property that Riedel could not have discovered upon simple inspection or whether Fenasci then concealed or negligently failed to disclose such knowledge or information to Riedel.
Additionally, while Riedel contended in opposition to the motion for summary judgment that Brunet's deposition testimony impeached his affidavit, we disagree. In his deposition, Brunet, who is also a certified mold inspector, testified that he did not see any evidence of mold. He further explained that during his inspection, he used a protimeter to determine if there was any excess moisture behind the walls, and the meter did not show any evidence of hidden moisture.
Moreover, we note that the fact that black mold was found on inspection of the condominium in late October 2014, more than five months after Riedel's purchase, has no bearing on any knowledge Fenasci may have had concerning the existence of mold prior to or at the time of sale.
In conclusion, Riedel presented no evidence to suggest that Fenasci was aware of hidden moisture and mold issues prior to or at the time of the sale of the condominium that she failed to disclose to Riedel. As such, Riedel has failed to carry her burden of demonstrating that a genuine issue of material fact remains as to her claims against Fenasci and Hollie Realty. Instead, on the record before us, we conclude that Fenasci and Hollie Realty are entitled to judgment in their favor as a matter of law.
CONCLUSION
For the above and foregoing reasons, the April 25, 2018 Rule to Show Cause Order is recalled, and Deborah Riedel's appeal is maintained. The November 6, 2017 judgment, granting the motion for summary judgment filed by Angela Fenasci and Hollie Realty, L.L.C./RE/MAX Northshore, and dismissing with prejudice all claims against them, is hereby affirmed. Costs of this appeal are assessed against appellant, Deborah Riedel.
RULE TO SHOW CAUSE ORDER RECALLED; JUDGMENT AFFIRMED.
Higginbotham, J. concurs.
McClendon, J. concurs

Although the Credit Deed is a part of the record on appeal, this document was apparently not introduced in support of or in opposition to the motion for summary judgment filed by Fenasci and Hollie Realty, but, instead, was filed in connection with another motion for summary judgment. Nonetheless, in the filings related to the motion for summary judgment presently before us, Riedel and Fenasci admit that the Act of Sale was executed on May 9, 2014.

Nevertheless, the court shall consider any documents filed in support of or in opposition to the motion for summary judgment to which no objection is made. LSA-C.C.P. art. 966(D)(2).

Notably, in her appellate brief, Riedel attempts to raise various issues that were not raised in her memorandum in opposition to Fenasci and Hollie Realty's motion for summary judgment in the trial court and, thus, were not addressed by the trial court below. A summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time. LSA-C.C.P. art. 966(F). Accordingly, we decline to address these issues raised for the first time on appeal.

With regard to Riedel's contention that the trial court erred in dismissing her redhibition claim, we note that a redhibitory action is between a seller and a buyer, and without such a relationship, the action cannot be maintained. Because no legal ownership is attributable to Fenasci, she cannot be considered a seller for purposes of redhibition. Duplechin, 665 So.2d at 84.

As noted above, Riedel testified in deposition that she received the email from Fenasci forwarding Brunet's report, but that she was unable to open the email attachment.

Indeed, Riedel signed a "Property Inspection Response Form" on May 2, 2014, the day after the Home Inspection Report was sent by email, listing items from the report that she requested be fixed, including the leaking shower head and tub in the master bathroom.