STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2023 CA 0982

JOSHUA B. ARCHOTE

VERSUS

WILLIAM F. TATE, IV, IN HIS OFFICIAL CAPACITY AS
PRESIDENT & CUSTODIAN OF RECORDS FOR LOUISIANA
STATE UNIVERSITY AGRICULTURAL & MECHANICAL
COLLEGE

JUN 0 3 2024

JUDGMENT RENDERED: _____

* * * * * * *

Appealed from the Nineteenth Judicial District Court
Parish of East Baton Rouge • State of Louisiana
Docket Number C727489 • Sec. 23

The Honorable Kelly Balfour, Presiding Judge

* * * * * * *

| | |
|---|---|
| Virginia Hamrick<br>Katie M. Schwartzmann<br>Melia Cerrato, *Student Attorney*<br>*Tulane First Amendment Law Clinic*<br>New Orleans, Louisiana | COUNSEL FOR APPELLANT<br>PLAINTIFF—Joshua B. Archote |
| Mark L. Barbre<br>Christen C. Triche<br>Michael A. Patterson<br>Baton Rouge, Louisiana | COUNSEL FOR APPELLEE<br>DEFENDANT—William F. Tate, IV,<br>in his Official Capacity as President<br>and Custodian of Records for<br>Louisiana State University<br>Agricultural & Mechanical College |

* * * * * * *

BEFORE: WELCH, LANIER, WOLFE,
GREENE, AND STROMBERG, JJ.

*Wolfe, J. dissents without reasons.*

**WELCH, J.**

In this mandamus proceeding, the plaintiff, Joshua B. Archote, appeals a judgment in favor of the defendant, William F. Tate IV, in his official capacity as president and custodian of records for Louisiana State University Agricultural and Mechanical College ("the Records Custodian"), sustaining the Records Custodian's peremptory exception raising the objection of *res judicata* and dismissing Mr. Archote's petition. Also before this Court is a motion to dismiss Mr. Archote's appeal filed by the Records Custodian. For reasons that follow, we deny the motion to dismiss, reverse the judgment of the trial court, and remand for further proceedings.

## BACKGROUND

On September 29, 2022, Mr. Archote sent a public records request to Louisiana State University Agricultural and Mechanical College ("LSU") pursuant to the provisions of the Public Records Law, La. R.S. 44:1, *et seq.* Therein, Mr. Archote sought the following:

> Records related to an internal investigation of former LSU assistant director of Greek Life, Donald Abels, that took place within the Interfraternity Council or any other LSU offices. The internal investigation would have taken place between August 2019 and August 2021. Note: I am not requesting the LSU Police report related to Abels' misconduct. LSU Police recommended after their investigation that an internal investigation take place.[1]

---

[1] Generally, as long as the purpose is legal, a person's purpose or motive for making a public records request is immaterial and may not be inquired about by the custodian of those records. See La. R.S. 44:31 and 32; **Angelo Iafrate Construction, L.L.C. v. State, Department of Transportation and Development**, 2003-0892 (La. App. 1st Cir. 5/14/04), 879 So.2d 250, 260, writ denied, 2004-1442 (La. 9/24/04), 882 So.2d 1131; **Webb v. City of Shreveport**, 371 So.2d 316, 320 (La. App. 2nd Cir.), writ denied, 374 So.2d 657 (La. 1979). However, for information purposes, we note that, according to the allegations of Mr. Archote's petition for writ of mandamus, Donald Abels was the former assistant director of Greek Life at LSU, and during his employment at LSU, he was accused of utilizing a restricted-access LSU student database to create a profile for a fake Greek Life recruit, creating fake social media accounts and a false LSU ID number, and then using that fictitious identity to entrap fraternity members on violations of LSU policies and drinking laws. The petition for writ of mandamus further alleged that "LSU Police conducted an investigation into the allegations against [Mr.] Abels and concluded that he had 'initiated a scheme (catfishing) to entrap fraternities in inappropriate behavior with recruits[,]'" and that "LSU Police concluded that [Mr.] Abels' alleged conduct was not criminal in nature and referred the matter for internal investigation by LSU." Mr. Archote, a student at LSU and the Editor-in-Chief of LSU's student newspaper, *Reveille*, sought to write a news story for *Reveille*

2

If you contend that some of the records I have requested are exempt from disclosure, I request that you redact or segregate any information or records you contend are exempt, but that you make available to me all other requested records or portions thereof that you do not contend are exempt. I also request that you inform me in writing whether you are withholding any information or record, that you describe the records or information withheld, and that you advise me as specifically as possible of the basis for any claim or exemption.

Later that same day, LSU responded to Mr. Archote's public records request as follows:

This email is to respond to your Public Records Request made in your e-mail ... pursuant to Louisiana Public Records Law.

The records you seek are not subject to public record [*sic*]. The court ruled on this matter on March 8, 2022 in the case of *McMakin v. LSU*, Docket No. 709,240, Div. 29, 19th Judicial District Court.

This communication concludes LSU's response to your Public Records Request. LSU requests that you acknowledge receipt of this email.

Thereafter, on January 9, 2023, Mr. Archote commenced these proceedings seeking a writ of mandamus directed to the Records Custodian to make the requested records available (or to show cause to the contrary), an award of reasonable attorney's fees and costs pursuant to La. R.S. 44:35(D), and an award of damages and civil penalties pursuant to La. R.S. 44:35(E).[2]

In response to the petition for writ of mandamus, the Records Custodian filed a peremptory exception raising the objection of *res judicata*. Therein, the Records Custodian noted that Mr. Archote was seeking the production of employment records for a "rank-and-file" LSU employee under the Public Records Law and that a public records request for the exact same employment records from LSU had been denied the previous year in a different proceeding entitled *McMakin v. LSU*, bearing docket number 709,240, Div. 29, in the 19th Judicial District Court ("the *McMakin*

---

about LSU's internal investigation into and response to Mr. Abels' conduct and whether Mr. Abels' conduct was in violation of LSU's internal policies.

[2] Mr. Archote attached a copy of his public records request and LSU's response to his petition for writ of mandamus.

3

suit"). Based on the judgment in the *McMakin* suit, the Records Custodian argued that *res judicata* barred Mr. Archote from re-litigating the same issues on the same documents against the same defendant. Attached to the objection of *res judicata*/supporting memorandum was a copy of the petition for writ of mandamus and a copy of the judgment from the *McMakin* suit.

The petition for writ of mandamus in the *McMakin* suit was filed on July 1, 2021. According to the allegations of that petition, on June 14, 2021, the plaintiff therein, Dixon McMakin, made a public records request for "*records for an internal investigation performed by Human Resources on LSU employee Donald Abels*" with "*[s]aid internal investigation [being] cited per LSU Police Investigator John Meliet U2286 for Case 20190820-008.*" On that same date, following receipt of Mr. McMakin's request, LSU responded: "[*t*]*he records ... you seek are not subject to public disclosure pursuant to* [**East Bank Consolidated Special Service Fire Protection District v. Crossen**, 2004-0838 (La. App. 5th Cir. 12/28/04), 892 So.2d 666, writ denied, 2005-0212 (La. 4/1/05), 897 So.2d 608]." Accordingly, Mr. McMakin sought a writ of mandamus compelling the then custodian of records for LSU to make the requested records available for inspection or copying (or to show cause to the contrary).

The judgment in the *McMakin* suit was rendered on March 8, 2022 (after a hearing) and signed by the trial court on April 19, 2022. Therein the trial court[3] determined that after "the weighing of constitutional interests," "the employee's privacy interest and non-disclosure of the requested documents" outweighed the public's interest in disclosure of the requested documents.[4] Therefore, Mr. McMakin's request for a writ of mandamus was denied.

---

[3] We note that the presiding judge in the *McMakin* suit is the same judge who presided over this proceeding.

[4] According to the record, Mr. Abels left his employment with LSU in August 2021 and was hired by Sewanee: The University of the South ("Sewanee") approximately a month later. Thus, at the

The Records Custodian also filed an opposition[5] to Mr. Archote's petition for writ of mandamus. In the opposition to the writ of mandamus, the Records Custodian urged the trial court to reach the same determination as the *McMakin* suit, *i.e.* that the records were not subject to disclosure because Mr. Abels' constitutional right to privacy under the United States Constitution and Article I, Section 5 of the Louisiana Constitution were superior to and outweighed Mr. Archote's and the public's interest in disclosing those records.[6]

Mr. Archote filed an opposition to the objection of *res judicata*, arguing that the Records Custodian could not meet his burden of establishing that *res judicata* barred his action because: Mr. Archote's lawsuit involved different parties from the *McMakin* suit; Mr. Archote's cause of action did not exist at the time of the *McMakin* suit; and Mr. Archote's lawsuit arose from a different transaction or occurrence than the *McMakin* suit.

A hearing on Mr. Archote's petition for writ of mandamus and the Records Custodian's objection of *res judicata* was scheduled for February 23, 2023. Prior to the hearing, Mr. Archote and the Records Custodian entered into a partial stipulation regarding facts and the authenticity and admissibility of documents for the purpose of streamlining the presentation of evidence and argument at the hearing.

---

time of Mr. McMakin's public records request, Mr. Abels was still an LSU employee; however, at the time of the hearing and rendition and signing of the judgment in the *McMakin* suit, Mr. Abels was no longer an LSU employee.

[5] Although the Records Custodian captioned his responsive pleading as an "opposition," La. C.C.P. art. 3783 requires that a written answer be filed in response to a petition for writ of mandamus.

[6] Because the trial court sustained the Records Custodian's objection of *res judicata*, the issues raised in the Records Custodian's opposition with regard to Mr. Abels' constitutional right to privacy were not addressed by the trial court, and thus, are not at issue in this appeal. However, we note that Mr. Archote argued that since the rendition of the judgment in the *McMakin* suit, Mr. Abels waived his constitutional right to privacy regarding those records because Mr. Abels gave an interview to the student newspaper at Sewanee, *The Sewanee Purple*, in which he discussed LSU's internal investigation, claimed that he had been exonerated, and provided an email to *The Sewanee Purple* between himself and an LSU Human Resources employee, Jennifer Doolos Normand, about the investigation.

With regard to facts, the parties stipulated to the following: (1) LSU Office of Human Resource Management conducted an investigation into the conduct of Mr. Abels addressed in the police report for Incident Number 20190820-008; (2) Mr. Abels was a public employee of LSU at the time of the investigation; (3) Mr. Abels was no longer an employee in September 2022; (4) the records related to LSU Office of Human Resource Management's investigation were maintained in Mr. Abels' employee file; (5) LSU Policy Statement 40[7] was in effect at all times pertinent to Mr. Abels; and (6) the Court rendered judgment in favor of LSU in the *McMakin* suit.

With regard to documents, the parties stipulated to the authenticity and admissibility of the following, which were attached thereto: (1) LSU Police Department Report, Incident No. 20190820-008 dated June 4, 2021; (2) LSU's denial of Mr. Archote's public records request dated September 29, 2022; (3) Mr. McMakin's public records request from the *McMakin* suit for "records for an internal investigation performed by Human Resources on LSU Employee Donald Abels" dated June 14, 2021; (4) LSU's denial of Mr. McMakin's public records request from the *McMakin* suit; (5) Mr. Archote's public records request to LSU dated October 7, 2022, for emails sent from Jennifer Doolos Normand's LSU email address on August 26, 2022;[8] (6) LSU Policy Statement 40; and (7) the judgment in the *McMakin* suit.

After a hearing on February 23, 2023, which consisted of argument of counsel and the Records Custodian offering into evidence the exhibits attached to its objection, the trial court sustained the objection of *res judicata* filed by the Records Custodian and dismissed Mr. Archote's petition for writ of mandamus. A judgment

---

[7] LSU Policy Statement 40 was entitled "CONFIDENTIALITY OF PERSONNEL RECORDS OF UNIVERSITY EMPLOYEES."

[8] See footnote 6.

6

in accordance with the trial court's ruling was signed on March 9, 2023.[9] Thereafter, Mr. Archote filed a motion for new trial, which the trial court denied pursuant to a judgment signed on May 19, 2023. Mr. Archote now appeals.

On appeal, Mr. Archote contends that the trial court erred in sustaining the Records Custodian's objection of *res judicata* pursuant to La. C.C.P. art. 927(A)(3) because, as a matter of law, *res judicata* does not apply and further, the Records Custodian did not offer proof of all elements of *res judicata* as required by law.

## MOTION TO DISMISS

In response to Mr. Archote's appeal, the Records Custodian has filed a motion to dismiss the appeal. Therein, the Records Custodian argued that in Mr. Archote's motion for appeal (and in his statement of jurisdiction in his appellate brief to this Court), he references his appeal as being from the May 19, 2023 judgment, which denied his motion for a new trial and was a non-appealable interlocutory judgment, rather than the March 9, 2023 final judgment of dismissal. Therefore, the Records Custodian claims that this Court lacks appellate jurisdiction to review that judgment. In addition, the Records Custodian claims that Mr. Archote's appeal of the interlocutory judgment should not be converted to an application for supervisory writs because Mr. Archote's motion for appeal was filed more than thirty days after the notice of judgment on the motion for new trial, reversal of the trial court's decision will not terminate the litigation, and there is no clear error in the trial court's judgment. Accordingly, the Records Custodian contends that this Court should dismiss Mr. Archote's appeal and decline to convert it to an application for supervisory writs.

---

[9] We note that the March 9, 2023 judgment of the trial court specifically provided: "**IT IS FURTHER ORDERED, ADJUDGED[,] AND DECREED** that [Mr. Archote's] "Petition for Writ of Mandamus is **DISMISSED**." This judgment of dismissal did not indicate whether dismissal of the petition was with or without prejudice. When a judgment is silent as to whether the suit is being dismissed with or without prejudice, the dismissal must be without prejudice. **Collins v. Ward**, 2015-1993 (La. App. 1st Cir. 9/16/16), 204 So.3d 235, 239. Therefore, the dismissal of Mr. Archote's petition for writ of mandamus was without prejudice.

We recognize that Mr. Archote's motion for appeal does reference the May 19, 2023 judgment, which denied his motion for new trial, rather than the March 9, 2023 judgment sustaining the objection of *res judicata* and dismissing his petition for writ of mandamus. We also recognize that a judgment denying a motion for new trial is an interlocutory order and is normally not appealable. See La. C.C.P. art. 2083(C). However, when a motion for appeal refers by date to a judgment denying a motion for new trial, but the circumstances indicate from the appellant's brief that the appellant actually intended to appeal from the final judgment on the merits, the appeal should be maintained as being taken from the final judgment on the merits rather than the judgment denying the motion for new trial. **Miller v. Albertson's Companies, LLC**, 2023-0527 (La. App. 1st Cir. 12/27/23), 381 So.3d 84, 88; **Byrd v. Pulmonary Care Specialists, Inc.**, 2016-0485 (La. App. 1st Cir. 12/22/16), 209 So.3d 192, 195.[10]

Herein, although Mr. Archote referenced the May 19, 2023 judgment on the motion for new trial in his motion for appeal and his statement of jurisdiction in his brief to this Court, it is clear from Mr. Archote's appellate brief that he intended to appeal the judgment sustaining the Records Custodian's objection of *res judicata* and the dismissal of his petition for writ of mandamus. More specifically, all of Mr. Archote's assignments of error and the arguments briefed in support thereof focus exclusively on the trial court's decision to sustain the objection of *res judicata*; Mr. Archote raises no assignments of error or arguments related to the trial court's decision to deny his motion for new trial. Therefore, Mr. Archote's mistake in listing the date of the wrong judgment in his motion for appeal and statement of jurisdiction

---

[10] See also **Smith v. Hartford Accident and Indemnity Company**, 254 La. 341, 223 So.2d 826, 828-829 (1969); **Fruehauf Trailer Co. v. Baillio**, 252 La. 181, 190, 210 So.2d 312, 314 (1968); **Thomas v. Comfort Center of Monroe, LA, Inc.**, 2010-0494 (La. App. 1st Cir. 10/29/10), 48 So.3d 1228, 1233; **Carpenter v. Hannan**, 2001-0467 (La. App. 1st Cir. 3/28/02), 818 So.2d 226, 228-229, writ denied, 2002-1707 (La. 10/25/02), 827 So.2d 1153; **Reno v. Perkins Engines, Inc.**, 98-1686 (La. App. 1st Cir. 9/24/99), 754 So.2d 1032, 1033, writ denied, 99-3058 (La. 1/7/00), 752 So.2d 863; **Dural v. City of Morgan City**, 449 So.2d 1047, 1048 (La. App. 1st Cir. 1984).

is insufficient grounds for the dismissal of his appeal, particularly since appeals are favored and will be dismissed only when the grounds are free from doubt. See **Byrd**, 209 So.3d at 195. Thus, we will treat Mr. Archote's appeal as an appeal of the March 9, 2023 judgment. Accord **Byrd**, 209 So.3d at 195; see also **Miller**, 381 So.3d at 88.[11]

## LAW AND DISCUSSION

*Res judicata* is designed to promote judicial efficiency and final resolution of disputes, and generally precludes the re-litigation of claims arising out of the same facts and circumstances between the same parties of a previous suit in which there is a valid, final judgment. **Sutton v. Adams**, 2022-01672 (La. 3/7/23), 356 So.3d 1038, 1042; **Avenue Plaza, L.L.C. v. Falgoust**, 96-0173 (La. 7/2/96), 676 So.2d 1077, 1079. The doctrine of *res judicata* is *stricti juris*; any doubt concerning the applicability of the principle must be resolved against its application. **Sutton**, 356 So.3d at 1042.

*Res judicata* may be raised by peremptory exception. See La. C.C.P. art. 927(A)(3). The burden of proving the facts essential to support the peremptory exception raising the objection of *res judicata* is on the party pleading the objection. **Jefferson v. Board of Supervisors of Southern University and Agricultural and Mechanical College**, 2021-0716 (La. App. 1st Cir. 3/3/22), 341 So.3d 603, 607. When an objection of *res judicata* is raised before the case is submitted and evidence is received on the objection, the standard of review on appeal is traditionally manifest error with regard to factual findings of the trial court. **Mitchell v. Aaron's, Inc.**, 2018-0131 (La. App. 1st Cir. 9/21/18), 257 So.3d 812, 814. However, the *res*

---

[11] Since Mr. Archote's appellate delays on the March 9, 2023 judgment did not begin to run until notice of the May 19, 2023 judgment denying his motion for new trial, Mr. Archote's motion for appeal, filed on July 12, 2023, is timely with respect to an appeal of the March 9, 2023 judgment. See La. C.C.P. arts. 1914, 1971 and 2087.

*judicata* effect of a prior judgment is a question of law that is reviewed on appeal *de novo*. *Id.*

Louisiana Revised Statutes 13:4231 sets forth the general principles for *res judicata* as follows:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
>
> (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
>
> (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
>
> (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.[12]

Under this statute, the Louisiana Supreme Court has emphasized that all of the following elements must be satisfied in order for *res judicata* to preclude a second action: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. **Burguieres v. Pollingue**, 2002-1385 (La. 2/25/03), 843 So.2d 1049, 1053.

In support of his objection of *res judicata*, the Records Custodian pointed to the petition and the judgment in the *McMakin* suit, arguing that the *McMakin* judgment was a valid and final judgment, that the records sought in Mr. Archote's

---

[12] There are exceptions to the general rule of *res judicata*, which are set forth in La. R.S. 13:4232. Because we find, for reasons detailed herein, that *res judicata* is not applicable to this case, we need not address whether one of the exceptions set forth in La. R.S. 13:4232 applies.

10

public records request were the same as those addressed by the trial court in the *McMakin* suit, and that Mr. Archote's interests were adequately represented in the *McMakin* suit. Therefore, the Records Custodian contended, and the trial court found, that that the judgment in the *McMakin* suit barred Mr. Archote's action under *res judicata*.

On appeal, Mr. Archote argues that the third element (the parties are the same or "identity of parties"), the fourth element (the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation), and the fifth element (the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation) are lacking with respect to the judgment in the *McMakin* suit. Thus, he contends that *res judicata* is inapplicable.

The determination of whether these elements exist herein requires a review of the right to public records under the law. Article XII, Section 3 of the Louisiana Constitution provides that "[n]o person shall be denied the right to ... examine public documents, except in cases established by law." Moreover, the right of access to public records guaranteed under this provision is a fundamental right, and whenever there is any doubt as to whether the public has the right of access to certain records, the doubt must be resolved in favor of the public's right of access. **New Orleans Bulldog Society v. Louisiana Society for the Prevention of Cruelty to Animals**, 2016-1809 (La. 5/3/17), 222 So.3d 679, 683; **Landis v. Moreau**, 2000-1157 (La. 2/21/01), 779 So.2d 691, 694. The Louisiana Legislature codified this right in the Public Records Law, La. R.S. 44:1, *et seq.*

Louisiana Revised Statutes 44:1(A)(2)(a) defines "public records" as:

All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including electronically

11

stored information or information contained in databases or electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state, ... except as otherwise provided in this Chapter or the Constitution of Louisiana.

The right to examine records under the Public Records Law is set forth in La. R.S. 44:31(B)(1) and (2), which provides that "any person ... may inspect, copy, or reproduce any public record" or "obtain a copy or reproduction of any public record." Furthermore, La. R.S. 44:31(A) and (B)(3) establish that "[p]roviding access to public records is a responsibility and duty of the ... custodian" of those records and that "[t]he burden of proving that a public record is not subject to inspection, copying, or reproduction ... rest[s] with the custodian."

The legislature, in the Public Records Law, sought to guarantee, in the most expansive and unrestricted way possible, the right of the public to inspect and reproduce those records that the laws deem public. **Angelo Iafrate Const., L.L.C. v. State ex rel. Dept. of Transp. and Development**, 2003-0892 (La. App. 1st Cir. 5/14/04), 879 So.2d 250, 254, <u>writ denied</u>, 2004-1442 (La. 9/24/04), 882 So.2d 1131. There was no intent on the part of the legislature to qualify, in any way, the right of access. As with the constitutional provision, the Public Records Law should be construed liberally, and any doubt must be resolved in favor of the right of access. *Id.*; **Landis**, 779 So.2d at 694-695.

The right of access to public records is fundamental; therefore, access may be denied only when the law specifically and unequivocally denies access. **Hilliard v. Litchfield**, 2001-1987 (La. App. 1st Cir. 6/21/02), 822 So.2d 743, 746. All exceptions, exemptions, and limitations to the laws pertaining to public records and their disclosure pursuant to the Public Records Law must be provided for in the

Public Records Law or the Constitution. See La. R.S. 44:4.1; **Angelo Iafrate Construction, L.L.C.**, 879 So.2d at 254. Therefore, it follows that any exception, exemption, or limitation to the Public Records Law is in derogation of the public's right to be reasonably informed and must be narrowly interpreted. *Id.*; **Times Picayune Publishing Corp. v. Board of Supervisors of Louisiana State University**, 2002-2551 (La. App. 1st Cir. 5/9/03), 845 So.2d 599, 605, writ denied, 2003-1589 (La. 9/5/03), 852 So.2d 1044.

The Public Records Law requires the custodian to present any public record to any person of the age of majority who so requests. La. R.S. 44:32(A). Public records must generally be made available "immediately"; however, the Public Records Law recognizes that some reasonable delay may be necessary to compile, review, and, when necessary, redact or withhold certain records that are not subject to production. See La. R.S. 44:33; **Roper v. City of Baton Rouge/Parish of East Baton Rouge**, 2016-1025 (La. App. 1st Cir. 3/15/18), 244 So.3d 450, 459, writ denied, 2018-0854 (La. 9/28/18), 252 So.3d 926. However, within five business days of the request, the custodian must provide a written "estimate of the time reasonably necessary for collection, segregation, redaction, examination, or review of a records request." See La. R.S. 44:35(A); **Roper**, 244 So.3d at 459-460.

In any case wherein "a record is requested and a question is raised by the custodian of the record as to whether it is a public record," the "custodian shall within five days, exclusive of Saturdays, Sundays, and legal public holidays, of the receipt of the request, in writing for such record, notify in writing the person making such request of his determination and the reasons therefor." La. R.S. 44:32(D). "Such written notification shall contain a reference to the basis under law which the custodian has determined exempts a record, or any part thereof, from inspection, copying, or reproduction." *Id.*

13

Enforcement of the Public Records Law is governed primarily by La. R.S. 44:35. Louisiana Revised Statutes 44:35(A) provides that "[a]ny person who has been denied the right to inspect, copy, reproduce, or obtain a copy or reproduction of a record under the [Public Records Law,] ... either by a determination of the custodian or by the passage of five days, ... may institute proceedings for the issuance of a writ of mandamus, injunctive or declaratory relief, together with attorney fees, costs and damages ... in the district court for the parish in which the office of the custodian is located."

In the *McMakin* suit (and ultimately in this suit), the exception or exemption to the Public Records Law at issue is the constitutional prohibition against unreasonable invasions of privacy, as set forth in Article I, Section 5 of the Louisiana Constitution, which is commonly referred to as the constitutional right to privacy. When a custodian of a public record asserts an individual's constitutional right to privacy as the basis of an exception, exemption, or limitation to the public's right to access public records, the custodian or the individual claiming the privacy right must prove that there is a reasonable expectation of privacy against disclosure of the information *to a person entitled to access* the public information. **Angelo Iafrate Construction, L.L.C.,** 879 So.2d at 255. If, and only if a reasonable expectation of privacy is found, the court must weigh or balance the public records disclosure interest against the privacy interest. *Id.* Such balancing is done by the court on a case-by-case basis and depends on the particular facts and circumstances involved. **City of Baton Rouge/Parish of East Baton Rouge v. Capital City Press, L.L.C.,** 2007-1088 (La. App. 1st Cir. 10/10/08), 4 So.3d 807, 819.

With these precepts in mind, we turn to a discussion of the first element of *res judicata* at issue in this appeal, *i.e.* whether the parties are the same. It is undisputed that Mr. Archote was not physically a party to the *McMakin* suit. However, the Records Custodian argues that this element of *res judicata* does not require the

parties to be physically the same, but only requires that the parties be of the same capacity or quality. The Records Custodian claims that Mr. Archote and Mr. McMakin have the same capacity and quality because they had the same interest—advancing the public's interest in the disclosure of public records—and therefore, they should be treated as the same party for purposes of *res judicata*. Mr. Archote contends that he and Mr. McMakin do not share the same capacity or quality, there is no legal relationship between them, and the mere fact that they sought public records regarding the same person is insufficient to establish an identity of parties. We agree.

For purposes of *res judicata*, an identity of parties exists whenever the same parties, their successors, or others appear, so long as they share the same quality as parties. **Capitol One, N.A. v. Service Door & Millwork, LLC**, 2011-0691 (La. App. 1ˢᵗ Cir. 11/9/11), (*unpublished*) 2011 WL 5420374, *3 (citing **Mandalay Oil & Gas, L.L.C. v. Energy Development Corporation**, 2001-0993 (La. App. 1ˢᵗ Cir. 8/4/04), 880 So.2d 129, 140, writ denied, 2004-2426 (La. 1/28/05), 893 So.2d 72). Thus, the jurisprudence does not require that the parties in the two lawsuits be physically identical as long as they share the same quality as parties. **Capitol One, N.A.**, 2011 WL 5420374, *3(citing **Welch v. Crown Zellerbach Corporation**, 359 So.2d 154, 156 (La. 1978), and **Jensen Construction Company v. Department of Transportation and Development**, 542 So.2d 168, 171 (La. App. 1ˢᵗ Cir.), writ denied, 544 So.2d 408 (La. 1989)). In considering whether an identity of parties exists for *res judicata* purposes, the preclusive effect of a judgment binds the parties to the action, as well as those nonparties who are deemed "privies" of the parties in circumstances where "the nonparty's interests were adequately represented by a party to the action, who may be considered the 'virtual representative' of the nonparty, because the interests of the party and the nonparty are so closely aligned." **Mandalay**, 880 So.2d at 142. Furthermore, because *res judicata* is to be strictly

15

construed, any doubt as to this element must be resolved against application of *res judicata.* See **Five N Company, L.L.C. v. Stewart**, 2002-0181 (La. App 1st Cir. 7/2/03), 850 So.2d 51, 61.

We recognize, as pointed out by the Records Custodian, that there is a public interest in the disclosure of public records and that Mr. McMakin (in the *McMakin* suit) and Mr. Archote (in this suit) are advancing that interest. However, we cannot say that Mr. McMakin and Mr. Archote have the same capacity/quality or that Mr. Archote should be deemed a privy of Mr. McMakin such that they should be treated as the same party for purposes of *res judicata.* In the *McMakin* suit, Mr. McMakin filed suit to enforce *his individual right* under the Louisiana Constitution and Public Records Law[13] to examine certain public records regarding Mr. Abels. LSU maintained that those records were not subject to disclosure based on Mr. Abels' constitutional right to privacy and had to prove that Mr. Abels had a reasonable expectation of privacy against disclosure of that information to a person entitled access to that public information, *i.e.* Mr. McMakin. See **Angelo Iafrate Construction, L.L.C.**, 879 So.2d at 255. Following the trial court's apparent determination that Mr. Abels had a reasonable expectation of privacy, the court then weighed or balanced the public records disclosure interest against the privacy interest of Mr. Abels. See *Id.* Notably, this balancing is done by the court *on a case-by-case basis* and depends on the particular facts and circumstances involved. See **City of Baton Rouge/Parish of East Baton Rouge**, 4 So.3d at 819.

In this proceeding, Mr. Archote filed suit to enforce *his individual right* under the Louisiana Constitution and Public Records Law to examine certain public

---

[13] See La. Const. art. XII, §3 (providing that "[n]o person shall be denied the right to ... examine public documents, except in cases established by law") and La. R.S. 44:35(A) (providing that "[a]ny person who has been denied the right to inspect, copy, reproduce or obtain a copy of reproduction of a record under the [Public Records Law,] ... may institute proceedings for issuance of a writ of mandamus, injunctive or declaratory relief ...").

16

records regarding Mr. Abels.[14]  Again, as evidenced by his opposition, the Records Custodian maintains that those records are not subject to disclosure based on Mr. Abels' constitutional right to privacy.  Therefore, the Records Custodian will have to prove that Mr. Abels had a reasonable expectation of privacy against disclosure of that information to a person entitled access to that public information, *i.e.* Mr. Archote.  See **Angelo Iafrate Construction, L.L.C.**, 879 So.2d at 255.  If, and only if, it is determined that Mr. Abels has a reasonable expectation of privacy, the court would then weigh or balance the public records disclosure interest against the privacy interest of Mr. Abels, including whether Mr. Abels has now waived that privacy interest.[15]  See *Id.*  Again, this must be done *on a case-by-case basis* and depends on the particular facts and circumstances involved. See **City of Baton Rouge/Parish of East Baton Rouge**, 4 So.3d at 819.

Thus, Mr. McMakin and Mr. Archote, through their respective suits, were enforcing their individual constitutional and statutory right to examine public records.  While Mr. Archote is seeking access to the same public records regarding Mr. Abels that Mr. McMakin sought and was denied access, we find their common interest in obtaining public records concerning Mr. Abels insufficient to establish that their interests are so closely aligned that Mr. Archote was a privy of Mr. McMakin in the *McMakin* suit or that Mr. McMakin would have adequately represented Mr. Archote's interest in obtaining those the public records in this suit. Further, any doubt must be resolved against such a finding.  Indeed, the exception or exemption to the Public Records Law upon which LSU and the Records Custodian rely to deny access to the public records concerning Mr. Abels is evaluated on a *case-by-case basis and depends on the particular facts and circumstances involved.*  Mr. McMakin, in enforcing his individual interest in

---

[14] See footnote 13.

[15] footnote 6.

obtaining public records and in establishing the particular facts and circumstances involved with his case, could not have adequately represented Mr. Archote's *future* interest in enforcing Mr. Archote's individual right to public records or the particular *future* facts and circumstances involved in Mr. Archote's case, including whether Mr. Abels waived his constitutional right to privacy following rendition of the judgment in the *McMakin* suit, as Mr. Abels' waiver of his constitutional right was not at issue in the *McMakin* suit.[16] Accordingly, we must conclude that the parties to the judgment in the *McMakin* suit are not the same parties in this suit—physically or in the same capacity or quality—and thus, this necessary element of *res judicata* is lacking herein.

Therefore, based on our review of the stipulations of the parties and evidence offered by the Records Custodian in support of his objection of *res judicata*, we find that the parties in this action are not the same parties in the *McMakin* suit. Absent this necessary element, *res judicata* is not applicable herein so as to bar Mr. Archote's petition for writ of mandamus.[17] Therefore, we must conclude that the trial court improperly sustained the Records Custodian's objection of *res judicata* and dismissed Mr. Archote's petition for writ of mandamus. Accordingly, we reverse the judgment of the trial court and remand this matter for further proceedings on Mr. Archote's petition for writ of mandamus.

## CONCLUSION

For all of the above and foregoing reasons, the motion to dismiss the appeal filed by William F. Tate IV, in his official capacity as president and custodian of

---

[16] See footnote 6.

[17] Since all of the necessary elements of *res judicata* must be satisfied in order for *res judicata* to apply, we need not address whether any of the other necessary elements exist herein. See **Burguieres**, 843 So.2d at 1053; **LaBarre v. Occidental Chemical Co.**, 2023-0139 (La. App. 1st Cir. 9/28/23), 376 So.3d 896, 902; **OAT Trustee, LLC v. Elite Investment Group**, 2022-0804 (La. App. 1st Cir. 2/9/23), 2023 WL 1945426, *7 (unpublished); and **Jeff Mercer, L.L.C. v. Austin Bridge and Road, LP**, 2022-0423 (La. App. 1st Cir. 11/4/22), 354 So.3d 710, 714-15.

records for Louisiana State University Agricultural and Mechanical College, is denied. In addition, the March 9, 2023 judgment of the trial court, sustaining the peremptory exception raising the objection of *res judicata* filed by William F. Tate IV, in his official capacity as president and custodian of records for Louisiana State University Agricultural and Mechanical College, and dismissing the petition for writ of mandamus filed by Joshua B. Archote is reversed, and this matter is remanded for further proceedings.

All costs of this appeal in the amount of $1,434.00 are assessed to the defendant/appellee, William F. Tate IV, in his official capacity as president and custodian of records for Louisiana State University Agricultural and Mechanical College.

**MOTION TO DISMISS DENIED; JUDGMENT REVERSED; REMANDED.**

19